IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMBER J. JACKSON,

    Plaintiff,

v.                                                                         1:16-cv-00960-LF

NANCY A. BERRYHILL,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Amber J. Jackson's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (Doc. 22), which was fully briefed on June 22, 2017. *See* Docs. 24, 26, 27. The parties consented to my entering final judgment in this case. Doc. 25. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to conduct a proper treating physician analysis of Dr. E.B. Hall's opinion. I therefore GRANT Ms. Jackson's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118. "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Ms. Jackson was born in 1980, was in special education throughout school due to a learning disability, and dropped out in the tenth grade. AR 177, 218, 240, 317.[4] She has worked at fast food restaurants, and as a babysitter for family members, but has not worked since 2012, and none of her work reached the level of substantial gainful employment. AR 30, 212–13, 219. Ms. Jackson filed applications for disability insurance benefits and supplemental security income

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 16-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

on March 7, 2012 and April 7, 2012 respectively—alleging disability since January 1, 2012 due to manic depression and bipolar disorder. AR 177–84, 209, 218.[5] The Social Security Administration ("SSA") denied her claims initially on August 13, 2012. AR 120–23. The SSA denied her claims on reconsideration on June 6, 2013. AR 124–30. Ms. Jackson requested a hearing before an ALJ. AR 131–32. On January 6, 2015, ALJ Barry O'Melinn held a hearing. AR 37–57. ALJ O'Melinn issued his unfavorable decision on April 13, 2015. AR 11–36.

At step one, the ALJ found that Ms. Jackson had not engaged in substantial, gainful activity since January 1, 2012, her alleged onset date. AR 16. At step two, the ALJ found that Ms. Jackson suffered from the following severe impairments: "Organic Brain Syndrome, Affective disorder; Anxiety Disorder; Attention Deficit Disorder; Attention Deficit Hyperactivity Disorder; Personality Disorder; Borderline Intellectual Dysfunction; and, obstructive sleep apnea." *Id.* At step three, the ALJ found that none of Ms. Jackson's impairments, alone or in combination, met or medically equaled a Listing. AR 17–20. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Jackson's RFC. AR 20–30. The ALJ found Ms. Jackson had the RFC

> to perform a full range of work at all exertional levels. Claimant can understand, carry out, and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and work situations, deal with routine changes in work setting, maintain concentration, persistence, and pace for up to and including 2 hours at a time with normal breaks throughout the work day. She must work in a low stress job with only occasional decision making and only occasional changes in the work setting. She is suitable for jobs involving work primarily with things and not people.

AR 20.

At step four, the ALJ concluded that Ms. Jackson did not have any past relevant work. AR 30. The ALJ found Ms. Jackson not disabled at step five because she could perform jobs

---

[5] Ms. Jackson's applications originally alleged an onset date of March 15, 2009, but due to her work from 2009 through 2011, her onset date was amended to 2012. *See* AR 177, 179, 224–25.

4

that exist in significant numbers in the national economy—such as dishwasher, laundry worker, and packer. AR 30–31. On May 28, 2015, Ms. Jackson requested review of the ALJ's unfavorable decision by the Appeals Council. AR 7–10. On July 26, 2016, the Appeals Council denied the request for review. AR 1–6. Ms. Jackson timely filed her appeal to this Court on August 25, 2016. Doc. 1.[6]

### IV. Ms. Jackson's Claims

Ms. Jackson raises several arguments for reversing and remanding this case: (1) the ALJ failed to conduct a proper treating physician analysis of the opinion of treating psychiatrist Dr. E.M. Hall; (2) the ALJ declined to give significant weight to the opinions of consulting neuropsychologist Dr. Koltuska-Haskin for reasons that are contrary to the evidence and the law; (3) the ALJ erred in rejecting without explanation parts of consultative psychologist Amy S. DeBernardi's opinion; (4) the ALJ erred in giving "significant weight" to treating nurse practitioner Deborah Deetz's statement that Ms. Jackson "needs to work" because this is an opinion on an issue reserved to the Commissioner; (5) the ALJ failed to address some of the moderate limitations noted in non-examining state agency doctor Scott Walker's opinion; (6) the ALJ erred in relying on the VE's testimony at step five because Ms. Jackson's limitation to simple jobs is incompatible with jobs requiring a reasoning level 2. Because I remand based on the ALJ's failure to properly analyze the opinion of treating physician Dr. E.M. Hall, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2–3.

V.      **Analysis**

Ms. Jackson argues that the ALJ erred by not conducting a proper treating physician analysis of her treating psychiatrist Dr. E.M. Hall's opinion. Doc. 22 at 17. She argues that at the first step of the treating physician analysis, the ALJ did not give valid reasons for declining to give Dr. Hall's opinion controlling weight. *Id*. at 14–16. She also argues that the ALJ failed to complete the second step of the treating physician analysis. *Id*. at 17. The Commissioner argues that the ALJ gave valid reasons for declining to give Dr. Hall's opinion controlling weight, and that the ALJ "explained" why the opinion was not entitled to "any significant weight." For the reasons discussed below, I find that the ALJ failed to conduct a proper treating physician analysis.

In analyzing whether a treating physician's opinion is entitled to controlling weight, the ALJ must perform a two-step process. "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (quoting *Watkins*, 350 F.3d at 1300). In making this initial determination, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the opinion meets both criteria, the ALJ must give the treating physician's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the

6

record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (both effective Aug. 24, 2012 to March 26, 2017). "Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion." *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether to reject a treating source's opinion altogether, or to assign it some lesser weight:

1. **Examining relationship**: more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**: more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:** more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:** the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**: more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:** any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (both effective Aug. 24, 2012 to March 26, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301. As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

The ALJ need not explicitly consider and apply each and every factor to each opinion. *Oldham*, 509 F.3d at 1258. "[N]ot every factor for weighing opinion evidence will apply in

every case." *Id*. (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished). In addition, the ALJ must "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300–01).

In Ms. Jackson's case, the ALJ wrote only a single paragraph explaining the weight he assigned to Dr. Hall's opinions:

> As the claimant's treating psychiatrist, Dr. Hall's opinions are entitled to controlling weight if I find his opinions to be well supported by the credible evidence of record. However, Dr. Hall's opinions are not well supported, and therefore I cannot give controlling weight to his opinions regarding the presence and severity of the claimant's medical impairments in this matter. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

AR 29.

As an initial matter, it is unclear to the Court that the ALJ applied the correct legal test in the first step of the treating physician analysis. At step one, the ALJ is tasked with determining whether the treating physician's opinion is "is well supported by medically acceptable clinical and laboratory diagnostic techniques" and "is consistent with the other substantial evidence in the record." *Pisciotta*, 500 F.3d at 1077. The ALJ appears to have conflated well-supported and consistent, stating that it was his task to determine if the opinions were "well supported by the credible evidence of record." AR 29.

8

In any event, the reason the ALJ gave for presumably rejecting Dr. Hall's opinions is legally insufficient and does not constitute substantial evidence. The sole reason the ALJ gave for rejecting Dr. Hall's opinions is his unsupported assertion that Dr. Hall "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." AR 29. Reliance on the subjective statements of a claimant is not a sufficient basis, standing alone, for disregarding a medical opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal citation, quotation, and emphasis omitted) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."); *Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings.").

As in *Langley*, the ALJ failed to articulate any evidentiary basis for concluding that Dr. Hall "uncritically" relied on Ms. Jackson's subjective report of symptoms. Moreover, to the extent Dr. Hall did rely on Ms. Jackson's reports in forming an opinion regarding her mental health, this is to be expected, and is not a sound reason for rejecting his conclusions. As the Tenth Circuit has explained, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). A psychological opinion need not be based solely on objective tests, but "may rest either on observed signs and symptoms or on psychological tests." *Robinson v.*

9

*Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Thus, the ALJ's reason for presumably rejecting Dr. Hall's opinion is legally insufficient.

The Commissioner asserts that an ALJ can discount a treating physician's opinion "which [is] based on the claimant's subjective assertions rather than objective medical evidence." Doc. 24 at 11 (citing *White v. Barnhart*, 287 F.3d 903, 907–08 (10th Cir. 2002)). *White*, however, does not stand for the proposition that the ALJ can discount a treating physician's opinion *solely* for this reason. In *White*, the court held that the ALJ "set forth specific and legitimate reasons for discounting the [treating physician's] opinion." *Id*. at 907. These reasons included a discussion of the discrepancies between the treating physician's functional assessment and exam findings, a comparison of the detailed exam findings of a consulting doctor with those of the treating physician, unexplained discrepancies in the treating physician's opinions, and a relatively short treating relationship. *Id*. at 907–08. Thus, the ALJ in *White* rejected the opinion of the treating physician based on a myriad of well-supported and well-documented reasons. In Ms. Jackson's case, the ALJ appears to have rejected Dr. Hall's opinion solely based on his unsupported assertion that the opinion was based only on subjective reporting. This is insufficient.

In addition, the ALJ entirely failed to conduct the second step of the treating physician analysis. While the Commissioner claims that the ALJ declined to give Dr. Hall's opinion "any significant weight," Doc. 24 at 10, the ALJ did not state what weight he accorded Dr. Hall's opinions, and did not weigh Dr. Hall's opinion using the required regulatory factors. *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (both effective Aug. 24, 2012 to March 26, 2017). The ALJ's failure to state what weight he gave Dr. Hall's opinion requires remand:

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much

weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned. If this is not done, a remand is required.

*Krauser*, 638 F.3d at 1330 (internal citations omitted); *see also Watkins*, 350 F.3d at 1301 ("We must remand because we cannot meaningfully review the ALJ"s determination absent findings explaining the weight assigned to the treating physician's opinion.").

## VI. Conclusion

The ALJ erred by failing to conduct a proper treating physician analysis of the opinion of Dr. Hall. Ms. Jackson asks the Court to remand for an immediate award of benefits, or in the alternative, to remand for rehearing. The Court finds that the better course is to remand for rehearing. The Court remands so that the ALJ can properly assess Dr. Hall's opinion. The Court does not reach Ms. Jackson's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent